1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

8

## DISTRICT OF NEVADA

9
10

CHARLES EDWARD HUEBLER,

    *Petitioner*,                                          3:05-cv-00048-RCJ-VPC

11
12

vs.

13

LENARD VARÉ, *et al.,*                                          ORDER

14

    *Respondents*.

15
16

    This represented habeas matter comes before the Court on respondents' motion (#72)

17

to disqualify counsel, on three outstanding extension motions (## 74-76) by the parties, and

18

further in connection with respondents' motion (#61) to dismiss.

19

    A principal question presented for decision is whether the Federal Public Defender has

20

a conflict of interest in this matter after representing petitioner also in related state post-

21

conviction proceedings, following upon the Supreme Court's decision in *Martinez v. Ryan*, 132

22

S.Ct. 1309 (2012), and this Court's holding on the conflict issue in *Bergna v. Benedetti*, No.

23

3:10-cv-00389-RCJ-WGC, 2013 WL 3491276 (D. Nev. July 9, 2013).

24

### *Background*

25

    Petitioner Charles Edward Huebler challenges his Nevada state conviction, pursuant

26

to a guilty plea, of lewdness with a child under the age of fourteen.

27

    The judgment of conviction was filed on October 24, 2003.  Huebler did not file a direct

28

appeal, and the time for doing so expired on Monday, November 24, 2003.

On or about November 10, 2004, Huebler filed a *pro se* original petition for extraordinary relief in the Supreme Court of Nevada under No. 44236 in that court.  On December 13, 2004, the court denied the petition on the following basis:

> This is a proper person petition for extraordinary relief. Petitioner challenges the validity of his judgment of conviction. We have considered the petition on file herein, and we are not satisfied that this court's intervention by way of extraordinary relief is warranted.  A challenge to the validity of a judgment of conviction should be raised in a post-conviction petition for a writ of habeas corpus filed in the district court in the first instance.[FN1] Petitioner may then appeal to this court from a final adverse order.[FN2] Accordingly, we
>
> ORDER the petition DENIED.
>
> [FN1] *See* NRS 34.724(2)(b); NRS 34.738(1).  We express no opinion as to whether petitioner could satisfy the procedural requirements of NRS chapter 34.
>
> [FN2] NRS 34.575(1).

#31, Ex. 16.  Notice in lieu of remittitur issued on January 7, 2005.[1]

On January 25, 2005, the Clerk of this Court filed papers with a petition, with dates stated therein variously as late as December 22, 2004.  The Court granted petitioner's motion for appointment of counsel on January 28, 2005.

Following federal habeas discovery, petitioner filed a counseled amended petition in federal court on May 12, 2006, and an apparently parallel state post-conviction petition on May 26, 2006, also through federal habeas counsel.  The parties ultimately stipulated to a stay of the federal proceedings pending the outcome of the state proceedings.

The state district court granted relief on the state petition based on claims corresponding to federal Ground 1, which alleged a violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  The court held that Huebler had demonstrated good cause to overcome the untimeliness of the petition as to this claim because the State had withheld an allegedly

---

[1]Petitioner further references a different original petition filed in the state supreme court under No. 44436.  However, that petition appears to have challenged a state district court's dismissal of a legal malpractice civil action without granting pauper status.

-2-

exculpatory video from the defense prior to the plea in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  The state district court dismissed all remaining claims in the state petition on the ground that they were time-barred.

Ultimately, on April 26, 2012, the Supreme Court of Nevada reversed the grant of relief, holding that petitioner had not demonstrated that the evidence was material under *Brady*. That is, the court held that petitioner had failed to demonstrate on the facts presented that there was a reasonable possibility that a defendant in the circumstances would not have entered a guilty plea had the video been disclosed to the defense prior to the plea.  The state supreme court accordingly held that the claim was time-barred.[2]

Earlier during the same state post-conviction appeal, the state supreme court held that petitioner had abandoned the remaining grounds in the state petition by not filing a cross-appeal from the state district court's dismissal of the grounds as time-barred.[3]  Petitioner contends that the court's ruling was incorrect under state law and, *inter alia*, denied him due process of law.[4]  However, it is undisputed, as backdrop to the current discussion, that petitioner did not file a cross-appeal from the dismissal of the remaining grounds and that the state supreme court held that petitioner abandoned the claims as a result.

In the pending motion to dismiss in the reopened federal matter, respondents contend that: (a) the *Brady* claim in federal Ground 1 is procedurally defaulted following upon the state supreme court's holding that the claim was time-barred: (b) the remaining claims in federal Grounds 2 through 4 are not exhausted because they were not presented to the state supreme court in a procedural posture in which the merits of the claims would be considered; (c) if exhausted, the four grounds are procedurally defaulted; and (d) Grounds 1 and 2 further are untimely because they do not relate back to a timely claim in the prior federal pleading.

The particular arguments on the motion to disqualify are discussed *infra*.

---

[2]#56, Ex. 73.

[3]#57, Ex. 66, at 2 n.1.

[4]See #68, at 24-26.

1

***Discussion***

2

Two decisions provide further backdrop to the discussion herein.

3

On March 20, 2012, during the state post-conviction proceedings in this case, the

4

Supreme Court issued its decision in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012).  In *Martinez*,

5

the Court held that inadequate assistance – or the absence – of counsel in initial-review

6

collateral proceedings may establish cause for a petitioner's failure to pursue a claim of

7

ineffective assistance of trial counsel in such proceedings.

8

On July 9, 2013, this Court issued its decision in *Bergna*.  The Court found that,

9

following *Martinez*, the Federal Public Defender had a conflict because the assistant federal

10

public defender representing petitioner had been part of the litigation team representing him

11

in the state post-conviction proceedings.  The Court explained the conflict as follows:

12

13

> Following *Martinez*, there in truth can be no dispute that petitioner currently does not have conflict-free counsel.  Following *Martinez*, competent federal habeas counsel would review the

14

> state proceedings to determine whether there were (a) possible additional claims of ineffective assistance of . . . counsel that (b)

15

> were not pursued by state post-conviction counsel through inadequate assistance.  Following *Martinez*, current counsel thus

16

> is placed in a position of having to review the performance of a state post-conviction litigation team on which she worked –

17

> including as an attorney – to determine whether the team inadequately failed to raise additional claims of ineffective

18

> assistance of . . . counsel.  The fact that no such additional claims currently are raised in the current pleadings wholly begs the

19

> question.  Current counsel is under an obligation under *Martinez* to conduct such review, and she has a conflict of interest when

20

> doing so.  That conflict of interest is real, actual and current.

21

*Bergna*, 2013 WL 3491276, slip op. at *2 (footnote on case-specific particulars omitted).

22

***The Initial-Review Collateral Proceeding***

23

In the present case, petitioner urges, first, that there is no conflict of interest because

24

petitioner's 2004 original extraordinary writ petition constituted the initial-review collateral

25

proceeding for purposes of *Martinez*.  As petitioner's argument goes, federal habeas counsel

26

thus has had no occasion to consider her own possible inadequate assistance as counsel in

27

the 2006 state post-conviction proceeding because it was not the initial-review collateral

28

proceeding.

The Court is not persuaded.

The *Martinez* Court's explanation of what constitutes initial-review collateral proceedings – and most significantly, why – clearly excludes the type of original petition for discretionary review that Huebler filed in 2004:

> *Coleman v. Thompson*, [501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)], left open, and the Court of Appeals in this case addressed, a question of constitutional law: whether a prisoner has a right to effective counsel in collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial. These proceedings can be called, for purposes of this opinion, "initial-review collateral proceedings." *Coleman* had suggested, though without holding, that the Constitution may require States to provide counsel in initial-review collateral proceedings because "in [these] cases . . . state collateral review is the first place a prisoner can present a challenge to his conviction." *Id.*, at 755, 111 S.Ct. 2546. As *Coleman* noted, *this makes the initial-review collateral proceeding a prisoner's "one and only appeal" as to an ineffective-assistance claim, id.*, at 756, 111 S.Ct. 2546 (emphasis deleted; internal quotation marks omitted), . . . .
>
> . . . . .
>
> *Coleman* held that "[n]egligence on the part of a prisoner's postconviction attorney does not qualify as 'cause.'" . . . .
>
> *Coleman*, however, did not present the occasion to apply this principle to determine whether attorney errors in initial-review collateral proceedings may qualify as cause for a procedural default. The alleged failure of counsel in *Coleman* was on appeal from an initial-review collateral proceeding, and in that proceeding the prisoner's claims had been addressed by the state habeas trial court. *See* 501 U.S., at 755, 111 S.Ct. 2546.
>
> As *Coleman* recognized, *this marks a key difference between initial-review collateral proceedings <u>and other kinds of collateral proceedings</u>*. When an attorney errs in initial-review collateral proceedings, *it is likely that no state court at any level will hear the prisoner's claim*. . . . And if counsel's errors in an initial-review collateral proceeding do not establish cause to excuse the procedural default in a federal habeas proceeding, *no court will review the prisoner's claims*.
>
> . . . . .
>
> . . . . By deliberately choosing to move trial-ineffectiveness claims outside of the direct-appeal process, where counsel is constitutionally guaranteed, *the State significantly diminishes prisoners' ability to file such claims. It is within the context of this state procedural framework* that counsel's ineffectiveness in an initial-review collateral proceeding qualifies as cause for a procedural default.

1

2
. . . . .

3
. . . . Allowing a federal habeas court to hear a claim of ineffective assistance of trial counsel when an attorney's errors (or the absence of an attorney) caused a procedural default in an initial-review collateral proceeding acknowledges, as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim. From this it follows that, when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, *where the claim should have been raised*, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

4

5

6

7

8

9

10

11

12
. . . . .

13
The rule of *Coleman* governs *in all but the limited circumstances recognized here*.  The holding in this case does not concern attorney errors *in other kinds of proceedings*, *including* appeals from initial-review collateral proceedings, second or successive collateral proceedings, and *petitions for discretionary review in a State's appellate courts*. . . . .

14

15

16

17
. . . . .

18
Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

19

20

21
132 S.Ct. at 1315, 1316, 1318 & 1320 (italic and underlined emphasis added).

22
Both by definition and rationale, the petition for discretionary review that Huebler filed

23
in the Supreme Court of Nevada – which is the entire state appellate system in Nevada – did

24
not constitute an initial-review collateral proceeding under *Martinez*.

25
The petition quite clearly did not constitute Huebler's "'one and only appeal' as to an

26
ineffective-assistance claim" under Nevada state law.  Rather, as the state supreme court's

27
order quoted previously reflects, a petitioner can – and indeed should – instead file a state

28
post-conviction petition in the state district court in the first instance.  If the discretionary

petition were the "one and only appeal" for an ineffective assistance claim, then a petitioner who thereafter filed a state post-conviction petition would be met with a viable objection that he could not pursue the claims in the district court petition because it was a successive petition to the prior original petition.  As the Court can affirm from the habeas cases that regularly come before it, that is not what happens under Nevada state law.  If a petitioner files a timely and non-successive (vis-à-vis prior state post-conviction petitions *in the state district court*) petition after having pursued an original petition for discretionary review in the state supreme court, the fact that a claim was raised previously in the petition for discretionary review serves as no bar to the claim.  The petition for discretionary review in truth decidedly is *not* the appeal for ineffective-assistance claims, much less the "one and only" appeal.

Accordingly, if a petitioner fails to raise an ineffective-assistance claim in a petition for discretionary review, there is no likelihood that – for that reason – "no state court at any level will hear [his] claims."  If the petitioner instead files a state post-conviction petition in the state district court, then he can raise any ineffective-assistance claim that he wishes.  He can do so whether or not the claims were raised previously in the petition for discretionary review, subject only to other potentially applicable procedural rules that are not hinged on whether he previously filed a petition for discretionary review.

The State of Nevada clearly has not significantly diminished petitioners' ability to file ineffective-assistance claims within the context of a state procedural framework in which it routes the claims to petitions for discretionary review without counsel.  The Supreme Court of Nevada instead consistently tells petitioners to file *a state post-conviction petition in the state district court,* and it indeed even has threatened to sanction petitioners for disregarding its repeated admonitions in this regard.  *See Hosier v. State*, 121 Nev. 409, 117 P.3d 212 (2005).  Prisoners' dogged disregard of what the state high court has stated repeatedly in hundreds if not thousands of cases does not turn a disfavored petition for discretionary review into the initial-review collateral proceeding where such claims should be raised.

Finally, in that same vein, the petition for discretionary review filed by Huebler indisputably is not the proceeding "where the claim should have been raised" as discussed

in *Martinez.*  The petition for discretionary review instead decidedly is *not* the proceeding in which the State directs – or even wants – petitioners to file ineffective-assistance claims.  The initial-review collateral proceeding under *Martinez* is the proceeding to which the "state procedural framework, by reason of its design and operation,"[5] directs ineffective-assistance claims.  It clearly is not another procedural vehicle frivolously commandeered by inmates that is neither designed nor intended for the claims generally.

The Court accordingly holds that the 2004 petition for discretionary review filed by Huebler was not an initial-review collateral proceeding for purposes of *Martinez*.  There is more, much more, to applying *Martinez* than looking merely for the first proceeding in which the petitioner attempted to pursue his ineffective-assistance claims, whether or not that is the procedure to which the state procedural framework steers the claims.

The three Ninth Circuit decisions relied upon by petitioner are not to the contrary and in truth have nothing to do with the issue.

The Ninth Circuit's exhaustion holding in *Chambers v. McDaniel*, 549 F.3d 1191 (9th Cir. 2008), does not establish that an original petition for discretionary review in the Supreme Court of Nevada constitutes an initial-review collateral proceeding for purposes of *Martinez*.

In *Chambers*, the Ninth Circuit held that an order of the Supreme Court of Nevada that included some of the language used in the December 13, 2004, order denying Huebler's original petition must be construed as a merits ruling that exhausted the claims presented in the petition.  549 F.3d at 1195-99.  The Court of Appeals based this holding upon a principle of construction pursuant to which the court "must construe an ambiguous state court response as acting on the merits of a claim, if such a construction is plausible."  549 F.3d at 1197.

---

[5] *Cf. Trevino v. Thaler*, 133 S.Ct. 1911, 1921 (2013).  *Trevino* is consistent with the discussion herein. In *Martinez*, the state procedural framework required that ineffective-assistance claims be raised in a state post-conviction proceeding rather than on appeal.  In *Trevino*, in contrast, the state procedural framework did not unequivocally prohibit the assertion of ineffective-assistance claims on direct appeal, but it made it "highly unlikely" that a defendant would have a meaningful opportunity to raise such a claim on direct appeal.  The Supreme Court held in *Trevino* that the distinction did not render the *Martinez* holding inapplicable.  *Trevino* addresses the relationship between the direct appeal and state post-conviction proceedings under state practice.  *Trevino* makes no holding regarding what constitutes the initial-review collateral proceeding, and the Supreme Court was not called upon in *Trevino* to parse between different post-conviction proceedings.

1      *Chambers* does not establish that a petition for discretionary review in the Supreme

2 Court of Nevada constitutes an initial-review collateral proceeding under *Martinez*. Nothing

3 in *Chambers* establishes: (a) that such a petition for discretionary review constitutes an

4 inmate's "'one and only appeal' as to an ineffective-assistance claim" under Nevada state law;

5 (b) that if the inmate fails to raise an ineffective-assistance claim in such a petition there

6 thereafter is no likelihood that any state court at any level will hear his claims; (c) that the state

7 procedural framework necessarily routes such claims to such a petition; and/or (d) that such

8 a petition is the proceeding "where the claim should have been raised," under the state

9 procedural framework. *Those* are the factors that make a proceeding an initial-review

10 collateral proceeding under *Martinez*. Merely because a state supreme court has an

11 extraordinary discretionary authority under the state constitution to hear claims, including

12 ineffective-assistance claims, on an original petition does not make such a proceeding an

13 initial-review collateral proceeding.

14      Nothing in *Martinez* hinges a conclusion that a proceeding is an initial-review collateral

15 proceeding simply upon whether a proceeding potentially could or actually did exhaust an

16 ineffective-assistance claim. Promptly following the December 9, 2008, *Chambers* decision,

17 the Supreme Court of Nevada included language in newer orders expressly disclaiming the

18 making of a holding on the merits of any claim.[6]  If, as petitioner argues, *Chambers*

19

20      [6]*See, e.g., Bartlett v. Warden*, No. 53295 (Nev. March 12, 2009)(unpublished):

21          This is a proper person petition for a writ of habeas

22     corpus.  Petitioner challenges the validity of his judgment and
sentence.  We have reviewed the documents submitted in this

23 matter, and without deciding upon the merits of any claims, we
decline to exercise our original jurisdiction in this matter.  A

24 challenge to the validity of the judgment of conviction and
sentence must be filed in a post-conviction petition for a writ of

25 habeas corpus filed in the district court in the first

26 instance.[FN1] NRS 34.724(2)(b); NRS 34.738(1).  Accordingly,
we

27

28                                      (continued...)

1    establishes that a petition for discretionary review is an initial-review collateral proceeding

2    because the state supreme court has discretionary authority to hear the claims, then

3    proceedings on petitions where the state supreme court uses the post-*Chambers* language

4    also would constitute initial-review collateral proceedings if a petitioner frivolously pursued that

5    avenue first.  The consequence of such a holding would be – as petitioner's counsel likely is

6    aware – that the petitioner would have built-in cause for the failure to raise any claim of

7    ineffective assistance of counsel that is raised thereafter on federal habeas review because

8    he had not been appointed counsel in the purported "initial-review collateral proceeding."

9         This Court will make no such pernicious holding.  The Court will not give a petitioner

10   *carte blanche* to override a potential procedural default of a claim because he was not

11   appointed counsel while pursuing a patently frivolous original petition procedure that the state

12   supreme court repeatedly has rejected as a substitute for a state post-conviction petition.

13   *Chambers*, again, has nothing to do with whether a proceeding constitutes an initial-review

14   collateral proceeding under *Martinez*.  The exhaustion holding in *Chambers* stands as a quite

15   narrow exception to over six decades of prior jurisprudence – including Supreme Court case

16   law – holding that a claim is not exhausted when a petitioner fails to present the claim in state

17   district court under available state post-conviction procedures and instead presents the claim

18   in an original petition to the state's high court seeking to invoke an extraordinary discretionary

19   jurisdiction.[7]  The Supreme Court quite clearly was not contemplating such a proceeding as

20   _____

21   [6](...continued)

22            ORDER the petition DENIED.

23            [FN1]   We express no opinion as to
         whether petitioner could satisfy the
24       procedural requirements of NRS chapter
         34.
25

26   [7]*See, e.g., Pitchess v. Davis*, 421 U.S. 482, 488 (1975); *Ex parte Hawk*, 321 U.S. 114, 116 (1944);
     *Sweet v. Cupp*, 640 F.2d 233, 238 (9th Cir. 1981).  *Accord Lindquist v. Gardner*, 770 F.2d 876 (9th Cir. 1985).
27   *See also Castille v. Peoples*, 489 U.S. 346, 351(1989)(presenting a claim in a procedural context in which the
     merits of the claim will not be considered, or will be considered only in special circumstances, does not
28                                                                                              (continued...)

                                                    -10-

1   constituting an initial-review collateral proceeding in *Martinez*.

2        The statutory tolling holding in *Blair v. Crawford*, 275 F.3d 1156 (9th Cir. 2002), also is

3 far afield from this case. *Blair* held only that a Nevada petition for discretionary review

4 constitutes a "properly filed application for State post-conviction or other collateral review" for

5 purposes of statutory tolling under 28 U.S.C. § 2244(d)(2). Nothing in *Blair* establishes that

6 such a petition constitutes an inmate's one and only appeal as to ineffective-assistance claims

7 under Nevada state law, that there is no likelihood that any state court will hear such claims

8 in any other proceeding, that the state procedural framework necessarily routes such claims

9 to such a petition, and/or that the such claims should be filed in such a petition for

10 discretionary review. Indeed, the *Blair* panel recognized that "the Nevada Supreme Court has

11 not issued a writ of habeas corpus under its original jurisdiction since the passage of N.R.S.

12 34.720 *et seq.*" 275 F.3d at 1159. Merely because an ineffective-assistance claim

13 theoretically *could* be heard by the state supreme court in a petition for discretionary review

14 under the state constitution does not establish, *inter alia*, that such a claim *should* be pursued

15 through such a petition. The latter point is the material one under *Martinez* for determining

16 whether a proceeding is an initial-review collateral proceeding. A holding regarding statutory

17 tolling under § 2244(d)(2) has nothing to do with the present issue.[8]

18        The recent holding in *Ha Van Nguyen v. Curry*, 736 F.3d 1287 (9th Cir. 2013), is even

19 further afield from this case, as it does not even superficially involve Nevada state procedure.

20        Petitioner argues as follows in pertinent part, and with the following emphasis:

21

22       [7](...continued)

23 exhaust the claim); *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994)(applying rule to filing of original petition in a state high court).

24

25      [8]Petitioner acknowledges that *Blair*'s holding pertains to statutory tolling under § 2244(d)(2) but then posits that "as the Supreme Court has recognized, the doctrines of exhaustion and procedural default are 'inseparable.'" #77, at 6. This argument is a *non sequitur*. *Blair* is not a procedural default case. There is no

26 "inseparable" relationship between exhaustion and application of a federal statute providing for statutory toling of the federal limitation period. To repeat what should be an obvious point, establishing merely *arguendo* that

27 a proceeding exhausted a claim does not establish that the proceeding is the initial-review collateral review proceeding contemplated by *Martinez*. The *Martinez* Court did not simply conflate the inquiry as to whether a

28 proceeding is an initial-review collateral review proceeding with the exhaustion, or statutory tolling, inquiry.

1

2          A stay was granted and Nguyen returned to state court.
     Nguyen filed a petition for habeas corpus *directly with the*
3    *California Supreme Court*, seeking review of the two claims. *Id.*
     The petition was summarily denied, indicating a procedural rather
     than merits ruling. *Id.* Nguyen then filed an amended petition
4    upon his return to federal court. After the district court's denial of
     the petition (in relevant part finding the two claims defaulted), the
5    Ninth Circuit remanded back to the district court, holding that "[i]f
     the procedural default of his appellate counsel's IAC may be
6    excused, and if the district court also concludes that Nguyen's
     second appellate counsel provided constitutionally ineffective
7    assistance in failing to raise his double jeopardy claim on direct
     appeal, the procedural default of Nguyen's second appellate
8    counsel may also be excused." *Id.* at 1298. The Ninth Circuit
     allowed a bypass of state post-conviction procedure altogether.
9    As in Nguyen, Huebler's bypass of the state district court cannot
     prevent his 2004 pro se proceeding from being viewed as his
10   initial-review collateral proceedings for purposes of conflict
     determination of Mr. Huebler's case.

11   #77, at 5.

12        Petitioner's counsel should be aware of the differences between California post-

13   conviction procedure and Nevada post-conviction procedure. Atypical aspects of California

14   state post-conviction procedure have figured prominently in past United States Supreme

15   Court jurisprudence. In *Carey v. Saffold*, 536 U.S. 214 (2002), the Court described

16   "California's unique state collateral review system"[9] as follows, *expressly distinguishing a*

17   *California "original writ" from an original writ in a state like Nevada*:

18             . . . . California's collateral review system differs from that
     of other States in that it does not require, technically speaking,
19   appellate review of a lower court determination. Instead it
     contemplates that a prisoner will file a new "original" habeas
20   petition. And it determines the timeliness of each filing according
     to a "reasonableness" standard. These differences, it is argued,
21   require treating California differently from "appeal" States, in
     particular by not counting a petition as "pending" during the
22   interval between a lower court's determination and filing of
     another petition in a higher court. . . . .

23
               California's "original writ" system, however, is not as
24   special in practice as its terminology might suggest. As
     interpreted by the courts, California's habeas rules lead a prisoner
25   *ordinarily* to file a petition in a lower court first. *In re Ramirez*, 89
     Cal.App.4th 1312, 1316, 108 Cal.Rptr.2d 229, 232 (2001)
26   (appellate court "has discretion to refuse to issue the writ ... on

27   _____

28   [9]536 U.S. at 217.

the ground that application has not [first] been made ... in a lower court"); *Harris v. Superior Court of Cal.*, 500 F.2d 1124, 1126 (C.A.9 1974) (same); 6 B. Witkin & N. Epstein, California Criminal Law § 20, p. 540 (3d ed.2000)(describing *general policy* that reviewing court will require application to have been made first in lower court). And a prisoner who files a subsequent and similar petition in another lower court (say, another trial court) will likely find consideration of that petition barred as successive. *See, e.g., In re Clark*, 5 Cal.4th 750, 767-771, 21 Cal.Rptr.2d 509, 855 P.2d 729, 740-744 (1993). At the same time, a prisoner who files that same petition in a higher, reviewing court will find that he can obtain the basic appellate review that he seeks, even though it is dubbed an "original" petition. *See In re Resendiz*, 25 Cal.4th 230, 250, 105 Cal.Rptr.2d 431, 19 P.3d 1171, 1184 (2001) (reviewing court grants substantial deference to lower court's factual findings). Thus, *typically* a prisoner will seek habeas review in a lower court and later seek appellate review in a higher court - just as occurred in this case.

. . . . .

The dissent contends that this application of the federal tolling provision to California's "original writ" system [to the indeterminate gaps allowed between the petitions] "will disrupt the sound operation of the federal limitations period in at least 36 States." . . . .   This is so, the dissent believes, because the prisoner is given two choices when his petition has been denied by the intermediate court:  He can file a "petition for hearing" in the supreme court within 10 days, or he can file a "new petition" in the supreme court. *In re Reed*, 33 Cal.3d 914, 918, and n. 2, 191 Cal.Rptr. 658, 663 P.2d 216, 217, and n. 2 (1983). Why is California different, the dissent asks, from "appeal" States that also give their supreme courts the power to entertain original habeas petitions? Won't our interpretation of the federal tolling rule, as it applies to California, apply equally to those other States, meaning that even after the statutory time to appeal to the supreme court has expired, the federal limitations period may still be tolled because a prisoner might, at any time, file an original petition?

The answer to this question is "no." *In "appeal" systems, the original writ plays a different role*. As the Supreme Court of Idaho (one of the States cited by the dissent) explains:

> "The Supreme Court, having jurisdiction to *review on appeal* decisions of the district courts in habeas corpus proceedings ... will not exercise its power ... to grant an original writ of habeas corpus, except in *extraordinary cases*." *In re Barlow*, 48 Idaho 309, 282 P. 380 (1929).

*See also, e.g., Commonwealth v. Salzinger*, 406 Pa. 268, 269, 177 A.2d 619, 620 (1962) ("extraordinary circumstances" required for exercise of original jurisdiction); *La Belle v. Hancock*, 99 N.H. 254, 255, 108 A.2d 545 (1954) (per curiam) ("original authority"

-13-

1

2

to grant habeas relief "not ordinarily exercised"); *Ex parte Lambert*, 37 Tex.Crim. 435, 436, 36 S.W. 81, 82 (1896) ("[E]xcept in extraordinary cases, we will not entertain jurisdiction as a court to grant original writs of habeas corpus").

3

4

5

6

7

8

9

10

11

12

13

*California, in contrast, has engrained original writs - both at the appellate level and in the supreme court - into its normal collateral review process.* As we have explained, and as the dissent recognizes, the only avenue for a prisoner to challenge the denial of his application in the superior court is to file a "new petition" in the appellate court. And to challenge an appellate court denial, "[f]urther review [of a habeas application] may be sought in [the supreme] court either by a new petition for habeas corpus or, preferably, by a petition for hearing." *In re Reed, supra,* at 918, n. 2, 191 Cal.Rptr. 658, 663 P.2d, at 216, n. 2 (emphasis added). *Unlike States such as, say, Idaho, see In re Barlow, supra, the original writ in California is not "extraordinary" - it is interchangeable with the petition for hearing, with neither option bringing adverse consequences to the petitioner.* Consequently, we treat California both as similar to other States (in that its "original writ" system functions like the "appeal" systems of those other States), and differently from other States *(in that the rule we apply to original writs in California does not apply to original writs in other States, precisely because original writs in California function like appeals).* . . . .

14 536 U.S. at 221-22 & 223-25 (emphasis added, except in the *In re Barlow* block quote).

15      The Ninth Circuit thus did not "allow[] a bypass of state post-conviction procedure

16 altogether" in *Ha Van Nguyen*.  Original writs are a part of state post-conviction procedure in

17 California. They clearly are not in Nevada.  To be sure, the petitioner in *Ha Van Nguyen* filed

18 only in the California Supreme Court rather than first in the state district court.   That

19 procedural move nonetheless did not take his petition outside the pale of California's "unique

20 state collateral review system."  Nor does *Ha Van Nguyen* reflect that the issues on appeal

21 in the Ninth Circuit included any issue as to what constituted an initial-review collateral

22 proceeding.  *Ha Van Nguyen* quite clearly made no suggestion – much less a holding – that

23 an original writ proceeding in an "appeal state" such as Nevada constitutes an initial-review

24 collateral proceeding that permissibly may be used to "bypass of state post-conviction

25 procedure altogether."  Petitioner completely overstates the reach of the decision.

26      Accordingly, nothing in either *Chambers*, *Blair*, or *Ha Van Nguyen* supports a

27 conclusion that Huebler's 2004 petition for discretionary review was an initial-review collateral

28 proceeding for purposes of *Martinez*.

1    The Court further rejects the suggestion made in the briefing that there was no initial-
2  review collateral proceeding for federal habeas counsel to review because the 2006 state
3  post-conviction proceeding was initiated after counsel was appointed in federal court.  The
4  2006 state post-conviction proceeding was an initial-review collateral proceeding under
5  *Martinez* and following authority regardless of when and by whom it was initiated, so long as
6  it was the first state post-conviction proceeding filed in the state district court.  When federal
7  habeas counsel files a first-ever state post-conviction petition for the petitioner in Nevada
8  state district court, counsel initiates an initial-review collateral proceeding.  When federal
9  habeas counsel does so, the holding of *Martinez* applies to that proceeding.  Federal habeas
10 counsel thus creates a situation thereafter where: (a) a petitioner might argue that a
11 procedural default of additional ineffective-assistance claims should be excused due to
12 ineffective assistance of federal habeas counsel *qua* counsel in the initial-review collateral
13 proceeding; and (b) the counsel who would be reviewing the matter and advising the
14 petitioner in that regard is the very same counsel who would be argued to have rendered
15 ineffective assistance in the state post-conviction proceeding.  Nothing in either *Martinez* or
16 this Court's *Bergna* decision turns upon when the initial-review collateral proceeding is
17 commenced in relation to the federal habeas proceeding.  "Initial" does not mean simply "first-
18 filed" for purposes of either *Martinez* or *Bergna*.

19    The Court accordingly holds that the initial-review collateral proceeding for purposes
20 of *Martinez* and *Bergna* in this case was the 2006 state post-conviction proceeding filed in the
21 state district court by federal habeas counsel.

22    ***Current Conflict***

23    The parties appear to agree that federal habeas counsel will not have an actual,
24 current conflict unless and until petitioner – through said federal habeas counsel – actually
25 attempts to raise ineffective-assistance claims that were not pursued in the 2006 state post-
26 conviction proceeding.

27

28

The Court is not persuaded.[10]

The Court again states herein what it held in *Bergna*:

> Following *Martinez*, there in truth can be no dispute that petitioner currently does not have conflict-free counsel. Following *Martinez*, competent federal habeas counsel would review the state proceedings to determine whether there were (a) possible additional claims of ineffective assistance of . . . counsel that (b) were not pursued by state post-conviction counsel through inadequate assistance. Following *Martinez*, current counsel thus is placed in a position of having to review the performance of a state post-conviction litigation team on which she worked – including as an attorney – to determine whether the team inadequately failed to raise additional claims of ineffective assistance of . . . counsel. *The fact that no such additional claims currently are raised in the current pleadings wholly begs the question.* Current counsel is under an obligation under *Martinez* to conduct such review, and she has a conflict of interest when doing so. *That conflict of interest is real, actual and current.*

*Bergna*, 2013 WL 3491276, slip op. at *2 (emphasis added; footnote omitted).

Federal habeas counsel is conflict-laden counsel *now.*

Petitioner's counsel contends that the key point is that the default of the claims in the 2006 state petition was due to the then *pro se* petitioner's failure to raise those claims in a timely petition prior to the Monday, October 25, 2004, expiration of the state limitations period, prior to counsel's appointment. With respect, counsel misses the key point. Federal habeas counsel creates a *Martinez-Bergna* conflict issue when counsel files a first-ever state post-conviction petition for the petitioner in Nevada state district court and thereafter seeks to continue as counsel in the federal habeas matter. The issue is not the arguments that would be raised to overcome a default of the claims that counsel *did* raise but instead is the arguments that conflict-free counsel would raise as to claims that she did *not* raise.

If a direct appeal counsel thereafter represented a petitioner also in the state post-

---

[10]Nor is the Court limited by the arguments of the parties on this ethical issue. Any concession by respondents does not cabin this Court's supervisory authority over the administration of justice in cases before it, including with regard to counsel's compliance with ethical obligations. The Court further also has discretion under 18 U.S.C. § 3006A(c) to "in the interests of justice, substitute one appointed counsel for another at any stage of the proceedings." As noted in *Wheat, infra*, when an ethical issue has been raised initially by motion, the Court is not limited in its resolution of the issue by the arguments in the case before it. Counsel can stipulate that an attorney's action is ethical no more so than they can stipulate to jurisdiction.

1    conviction proceedings, the Federal Public Defender would not accept the proposition that

2    counsel had no conflict of interest so long as counsel raised no claims placing counsel's own

3    effectiveness in the prior proceedings at issue. The Federal Public Defender instead would

4    be arguing – with justification – that the lack of such claims spoke to the *presence* of a conflict

5    rather than its *absence*. *Cf. Moormann v. Schriro*, 426 F.3d 1044, 1059 (9th Cir. 2005).

6         Yet the Federal Public Defender is making essentially the argument here that it

7    otherwise would flatly reject, as would this Court and reviewing courts.  That is, federal

8    habeas counsel is arguing that she has no conflict of interest in a proceeding in which her

9    effectiveness in other proceedings could be questioned because she herself currently has

10   raised no claims presenting such a question.[11]

11        That argument is a losing argument – in both contexts.  The presence of the conflict

12   does not turn upon what claims and arguments the conflict-laden counsel does or does not

13   raise for the petitioner.  Rather, the conflict is premised upon the inability of conflict-laden

14   counsel to make such decisions free of the inherent conflict.

15        Federal habeas counsel is conflict-laden counsel, now.

16   ***Potential Waiver of the Conflict***

17        Petitioner's counsel represents that petitioner has expressed a desire to waive "any"

18   conflict.  Respondents suggest that: (a) petitioner should be required to execute a waiver

19   "stating his unequivocal intention to waive any substantive claim or procedural argument in

20   this or any future federal habeas proceeding based on the effectiveness of his state court

21   representation by [federal habeas counsel], including arguments that are unknown to him at

22   the time they are waived;" (b) the Court should ensure that any waiver is made knowingly,

23   intelligently and voluntarily; and (c) "[t]o ensure that any waiver is knowing, intelligent, and

24   voluntary, this Court may need to provide Huebler with an opportunity to consult with

25

26

27   _____

28        [11]See #77, at 8-9.

-17-

1   independent counsel to advise Huebler concerning the potential consequences of waiver."[12]

2   The Court notes that petitioner currently is 70 years old and is housed at the Northern

3   Nevada Correctional Center (NNCC), which has a medical unit for inmates needing sustained

4   medical attention.  The first amended petition alleges that Mr. Huebler endures the effects

5   from advanced Parkinson's disease, that he suffers from severe post-traumatic stress

6   disorder following upon his military service in connection with the Vietnam conflict, and that

7   he was transferred to the medical unit at NNCC prior to 2006 due to poor health.[13]

8   / / / /

9   In Ground 3, petitioner refers, *inter alia*, to his alleged "questionable competency when

10   he entered his plea."  In Ground 4, petitioner alleges that he was denied rights to due process

11   and fair trial when the state trial court did not conduct a competency hearing  prior to his plea.

12   He alleges, *inter alia*, that "a defendant who is incompetent cannot knowingly and intelligently

13   waive his right to have the trial court determine his competency."   In Ground 5, petitioner

14   alleges that  he did not enter a knowing, intelligent, and voluntary plea due to the psychotropic

15   medication (Geodon and Prozac) that he was being administered at the time.

16   The October 1, 2003, psychosexual risk assessment conducted by clinical psychologist

17   Dr. Earl S. Nielsen, Ph.D, reflected, *inter alia*, dysthymic disorder (mild to moderate

18   depression), post-traumatic stress disorder, and schizoid personality features.  Petitioner

19   allegedly had attempted suicide during his pretrial detention, and Dr. Nielsen referred to

20   petitioner having depressive features with suicidal ideation.  An August 21, 2003, report by

21   psychologist Dr. Bill Davis, Ph.D. also reflected a diagnosis of post-traumatic stress disorder

22   and noted that petitioner had been housed in the mental health unit at the Washoe County

23   Detention Facility.[14]

24   Dr. David L. Schmidt, Ph.D. conducted a neuropsychological assessment for federal

25

26   [12]#77, at 10 (petitioner); #78, at 7 (respondents).

27   [13]#28, at 2 & 3.

28   [14]#31, Ex. 21.

-18-

habeas counsel in January 2006.  Dr. Schmidt opined that petitioner was competent to stand

trial at the time of the evaluation.  He stated, however, *inter alia*, that there was clear evidence

of neuropsychological and psychological impairment, that petitioner's post-traumatic stress

disorder impacted his guilty plea, that petitioner was chronically depressed with thought

processes that are sometimes confused and distractible, that he has barely adequate reading

skills for any written material presented to him in the legal setting, and that he is in the low

average range of intellectual functioning, indicating that his level of intelligence is better than

only nine out of one hundred people in his age group.[15]

/ / / /

The Supreme Court's discussion in *Wheat v. United States*, 486 U.S. 153 (1988),

although involving a different type of conflict of interest, is instructive.  *Wheat* pertains to

waivers of conflict of interest in circumstances where the accused has a Sixth Amendment

right to counsel of his choice, a right which is not operative here.  *Wheat* instructs:

> Petitioner insists that the provision of waivers by all affected defendants cures any problems created by the multiple representation.  But no such flat rule can be deduced from the Sixth Amendment presumption in favor of counsel of choice. Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them. . . . .

> . . . . [T]he trial courts, when alerted by objection from one of the parties, have an independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment.

> To be sure, this need to investigate potential conflicts arises in part from the legitimate wish of district courts that their judgments remain intact on appeal. As the Court of Appeals accurately pointed out, trial courts confronted with multiple representations face the prospect of being "whip-sawed" by assertions of error no matter which way they rule. If a district court agrees to the multiple representation, and the advocacy of counsel is thereafter impaired as a result, the defendant may well claim that he did not receive effective assistance. *See, e.g., Burger v. Kemp*, 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987).  On the other hand, a district court's refusal to accede to

---

[15]#32, Ex. 24.

the multiple representation may result in a challenge such as petitioner's in this case. Nor does a waiver by the defendant necessarily solve the problem, for we note, without passing judgment on, the apparent willingness of Courts of Appeals to entertain ineffective-assistance claims from defendants who have specifically waived the right to conflict-free counsel. *See, e.g., United States ex rel. Tonaldi v. Elrod*, 716 F.2d 431, 436–437 (CA7 1983); *United States v. Vowteras*, 500 F.2d 1210, 1211 (CA2), *cert. denied*, 419 U.S. 1069, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974); *see also Glasser, supra*, 315 U.S. at 70, 62 S.Ct., at 465 ("To preserve the protection of the Bill of Rights for hard-pressed defendants, we indulge every reasonable presumption against the waiver of fundamental rights").

Thus, where a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver, and insist that defendants be separately represented. As the Court of Appeals for the Third Circuit stated in *United States v. Dolan*, 570 F.2d 1177, 1184 (1978):

"[W]hen a trial court finds an actual conflict of interest which impairs the ability of a criminal defendant's chosen counsel to conform with the ABA Code of Professional Responsibility, the court should not be required to tolerate an inadequate representation of a defendant. Such representation not only constitutes a breach of professional ethics and invites disrespect for the integrity of the court, but it is also detrimental to the independent interest of the trial judge to be free from future attacks over the adequacy of the waiver or the fairness of the proceedings in his own court and the subtle problems implicating the defendant's comprehension of the waiver."

Unfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. . . . . These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics. Nor is it amiss to observe that the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them.

For these reasons we think the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not

-20-

1

burgeon into an actual conflict as the trial progresses.  . . . .

2

486 U.S. at 160-63.

3

4

The Court finds that the more prudent, expedient and efficient course – and the one

in the interests of justice under 18 U.S.C. § 3006A(c)[16] – is to appoint substitute counsel now.

5

6

Similar to the *Bergna* case, the Court notes at the outset that it would take a panel

7

attorney a substantial number of months to become sufficiently conversant with the file to

competently advise petitioner independently regarding the conflict.  More time thereafter

8

would be involved in setting the matter on the Court's calendar to conduct the proceeding

9

proposed.  If, at the conclusion of that proceeding, the Court ultimately found that petitioner

10

had not executed a knowing, voluntary and intelligent waiver of the conflict, then an additional

11

number of months would be required for replacement counsel thereafter to more thoroughly

12

investigate the matter and possibly present additional claims.

13

The Court certainly does not rule out the prospect that Mr. Huebler, possibly, currently

14

may be able to make a knowing, intelligent and voluntary waiver of the conflict.  It further

15

makes no express or implied holding, suggestion or implication that petitioner can or will

16

prevail based on the allegations and evidence outlined above in support of his claims

17

challenging his prior plea and associated waivers.  However, the Court cannot ignore the

18

prospect of such alleged circumstances being incorporated into a later argument that the

19

Court erroneously found that petitioner had made a knowing, intelligent and voluntary waiver

20

of the conflict and/or failed to *sua sponte* investigate petitioner's competency or functional

21

capacity to make a knowing waiver sufficiently thoroughly prior to accepting the waiver.

22

Moreover, frankly, the Court is concerned at this point that the Federal Public

23

Defender, following upon both this case and *Bergna*, fails to comprehend the basis for the

24

conflict of interest.  The presence of an actual, current conflict does not turn on what claims

25

26

_____

27

[16]Under 18 U.S.C. § 3006A(c), "the court may, in the interests of justice, substitute one appointed

28

counsel for another at any stage of the proceedings."  Petitioner does not have a right to have one appointed counsel over another.  An actually invalid waiver thus is not a necessary precondition to a substitution order.

-21-

1  conflict-laden counsel does or does not present.  Petitioner in this case thus has reflected a

2  desire to waive "any" conflict after being advised by conflict-laden counsel who does not yet

3  appear to fully grasp the actual basis for the conflict in this context.  That is not a good start

4  down a road leading to any possible knowing, intelligent, and voluntary waiver.[17]

5      / / / /

6      The Court finds that the better course in this case would be to appoint substitute

7  counsel now pursuant to § 3006A(c), so that this long-pending matter promptly can proceed

8  to a reliable resolution for all concerned, including petitioner.

9      Respondents' motion to dismiss will be denied without prejudice to the reassertion of

10  all defenses applicable following the filing or adoption of a pleading by petitioner through

11  conflict-free counsel.

12      IT THEREFORE IS ORDERED that respondents' motion (#72) to disqualify petitioner's

13  counsel is GRANTED and that the appointment of the Federal Public Defender, appearing

14  through Lori C. Teicher, Esq., is VACATED.

15      IT FURTHER IS ORDERED that respondents' motion (#61) to dismiss is DENIED

16  without prejudice to the reassertion of all defenses applicable following the filing or adoption

17  of a pleading by petitioner through substitute counsel.

18      IT FURTHER IS ORDERED that petitioner's motions (## 74 & 76) for an enlargement

19  of time are GRANTED *nunc pro tunc* in connection with the opposition (#77) filed.

20      IT FURTHER IS ORDERED that respondents' motion (#75) for an enlargement of time

21  to file a reply in support of the motion to dismiss is DENIED as moot.

22  _____

23      [17]The Court reiterates what it said in *Bergna*:

24          The Federal Public Defender simply is going to have to take the
          implications of *Martinez* into account in conflict review going forward,
25          including with regard to currently pending cases.

26      The Court does not rule out a *sua sponte* review of pending habeas cases in this regard, in the
  exercise of its supervisory authority.  The nature of the Federal Public Defender's response in this regard,
27  again, is cause for concern, given that federal habeas counsel has not exhibited an appreciation of the basis
  for the conflict.  Unlike the multiple-representation situation at issue in, *e.g., Wheat*, the actuality of this
28  conflict does not hinge upon what claims counsel actually makes in representing the petitioner.

1   The Clerk of Court shall forward this order to the CJA Coordinator for this Division.  The

2   CJA Coordinator shall identify a replacement panel attorney and forward their name and

3   address to the *pro se* law clerk assigned to the file, who thereafter shall forward a draft

4   appointment and scheduling order for the Court's review.[18]

5           DATED:    April 15, 2014.

7                                   _____

8                                   ROBERT C. JONES
                                    United States District Judge

---

26      [18]For the sake of expediency, the Court will allow replacement counsel the option, following a conflict-
27   free review, of incorporating the current amended petition (#28) and exhibits by reference in whole or in part
     in any additional pleadings filed, the normal operation otherwise of Local Rule LR 15-1(a) notwithstanding.

28           The Court makes no holding as to the extent, if any, to which the 2004 petition exhausted any claims.
     The action herein does not turn on the point.  Nothing herein suggests any intentional impropriety by counsel.